HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVE LINDER,<br><br>    Plaintiff,<br><br>  v.<br><br>GREAT NORTHERN INSURANCE COMPANY,<br><br>    Defendant. | CASE NO. C15-5002 RBL<br><br>ORDER GRANTING PROTECTIVE ORDER IN PART AND DENYING IN PART<br><br>DKT. #58 |

THIS MATTER comes before the Court on Defendant Great Northern Insurance Company's Motion for a Protective Order [Dkt. #58]. Plaintiff Steve Linder sued his insurer, Great Northern, for bad faith in connection with a water loss at his Kalama home. He claims Great Northern and its adjuster, Daniel Thenell, put their interests above his in adjusting the loss, harassed him to the point of hospitalization, and offered far less for the damage than an appraiser ultimately determined. He seeks broad discovery from Great Northern, including correspondence between various lawyers and law firms representing it on the loss and in this case.

Great Northern has so far redacted or withheld five categories of documents that it claims are protected from discovery:

(1) communications with Thenell Law Group, which questioned Linder and provided Great Northern "with legal guidance as to Linder's insurance claim";

(2) communications with Carney Badley Spellman, which "advised Great Northern on its rights and obligations under the insurance contract and Washington law";

(3) communications with, and work product prepared by, Wilson Smith Cochran & Dickerson on Great Northern's "litigation exposure";

(4) communications with, and work product prepared by, its subrogation counsel, Cozen O'Connor; and

(5) invoices from its attorneys and communications about those invoices.

*See* Dkt. #58. The Court has conducted an *in camera* review of the documents under *Cedell v. Farmers Insurance Co.*, 176 Wash.2d 686, 295 P.3d 239 (Wash. 2013).

Great Northern asks the Court to order that it does not have to produce documents protected by the attorney client privilege and the work product doctrine. Linder claims that in the bad faith context after *Cedell*, the attorney-client and the work product protections do not apply. He asks the Court to compel discovery of all withheld or redacted documents.

**I.       Standard of Review.**

Washington law governs the scope of the attorney-client privilege in this diversity case. *See, e.g., MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2526901, at *8 (W.D. Wash. May 27, 2014). The State Supreme Court's *Cedell* decision announced a two-part process for determining the discoverability of documents in first-party insurance cases where the insured claims bad faith. *See generally*, 295 P.3d 239. This Court announced its understanding of *Cedell* in *Philadelphia Indemnity Insurance Co. v. Olympia Early Learning Ctr.*, *No*. C12-5759 RBL, 2013 WL 3338503 (W.D. Wash. July 2, 2013).

In an *in camera* review, the Court begins with the presumption that the communications between an insurer and its attorney are discoverable. *See id*. at *5. The insurer may overcome this presumption by showing that its attorney was not engaged in quasi-fiduciary tasks (such as investigating, evaluating, or processing a claim), but was instead counseling the insurer about its potential liability, and his mental impressions are not at issue. *See id*. The insured may overcome the privilege if he makes a factual showing that "a reasonable person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred." *Cedell*, 295 P.3d at 246; *see also MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2526901, at *5 (W.D. Wash. May 27, 2014).

Federal law determines the scope of protection that the work-product doctrine affords. *See MKB Constructors*, 2014 WL 2526901, at *8. A party may not discover materials an opposing party or its counsel prepared in anticipation of litigation unless that party has a "substantial need" for the materials and "is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *See* Fed. R. Civ. P. 26(b)(3). This protection does not extend to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir. 1998).

Great Northern bears the burden of persuading the Court that the attorney-client privilege and the work product doctrine shield its documents from discovery. *See* Fed. R. Civ. P. 26(c); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

**II.     Thenell Law Group Communications.**

Great Northern argues that it need not produce its withheld or redacted communications with Thenell Law because it already provided all documents in which Thenell performed quasi-

fiduciary tasks, and the civil fraud exception does not apply. Linder argues that Thenell acted as an adjuster, rather than an attorney, and that he acted in bad faith, thereby waiving the attorney-client privilege.

After reviewing Great Northern's documents *in camera*, the Court is persuaded that Thenell Law engaged in quasi-fiduciary tasks. Thenell investigated, evaluated, and assisted with the processing of Linder's claim. Great Northern must produce its Thenell Law communications.

### III. Carney Communications.

Great Northern argues that it need not produce its withheld or redacted Carney communications because Carney analyzed Great Northern's legal rights, a non-fiduciary task. Linder does not make a counterargument. The Court's *in camera* review showed that Carney did not engage in quasi-fiduciary tasks, and the civil fraud exception does not apply. Great Northern appropriately withheld or redacted these privileged documents.

### IV. Wilson Communications and Work Product.

Great Northern argues that it withheld its Wilson communications and work product because Wilson did not engage in quasi-fiduciary work and all work it did produce was in anticipation of litigation. Linder does not advance a counterargument. The Court's *in camera* review showed that Wilson did not engage in quasi-fiduciary tasks, and the civil fraud exception does not apply. Great Northern appropriately withheld these privileged documents.

### V. Cozen O'Connor Communications and Subrogation Work Product.

Great Northern argues that because an insurer's investigation of its subrogation rights is not a quasi-fiduciary task related to its handling of an insured's claim, it need not produce its Cozen communications. Linder argues that he is entitled to Great Northern's subrogation documents, because (1) they regard its evaluation of his loss and demonstrate its motivation to

pay him less than he is owed, and (2) because Great Northern must pay him whatever it recovers in subrogation.

After reviewing the documents *in camera*, the Court is persuaded that Cozen did not engage in quasi-fiduciary tasks, and the civil fraud exception does not apply. Great Northern does not need to produce its privileged communications.

Cozen and Great Northern prepared its subrogation documents in anticipation of litigation. *See*, *e.g.*, *MKB Constructors*, 2014 WL 2526901, at *9 ("Subrogation activity anticipates litigation through its very purpose—recovering insurance payments from responsible third parties, often through litigation or the threat of litigation."). Linder's argument that these materials might evidence how Great Northern evaluated, and compensated him for, his loss does not amount to a showing of substantial or compelling need. *See* Fed. R. Civ. P. 26(b)(3). His argument that the work-product doctrine does not apply between an insurer and its subrogation counsel when an insurer owes its insured money is similarly unsubstantiated. He cannot point to any case holding such an exception to the Federal Rules of Evidence exists. Therefore, Great Northern does not need to produce its Cozen work product either.

**VI.     Legal Invoices and Related Communications.**

Great Northern argues that it only redacted or withheld billing statements containing privileged descriptions of its attorneys' legal work. Linder argues the attorney-client privilege does not apply, for his reasons stated above.

The attorney-client privilege does not protect against disclosure of a client's identity, fee amount, case file name, or general purpose of the work performed. *See Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Correspondence, bills, ledgers, statements, and time records that "reveal the motive of the client in seeking representation, litigation strategy, or

the specific nature of the services provided, such as researching particular areas of law," however, fall within the privilege. *See id*. The burden of establishing that the attorney-client privilege applies rests with the party asserting it. *See id*.

After reviewing Great Northern's redacted and withheld materials, the Court is satisfied that the attorney-client privilege and the work product doctrine protect all of Great Northern's legal invoices and related communications from disclosure, except those involving the Thenell Law Group—which did not give legal advice in the capacity of legal advisors. *See, e.g., United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (The privilege applies only when legal advice is sought "from a professional legal advisor in his capacity as such.").

## CONCLUSION

Great Northern's Motion for a Protective Order [Dkt. #58] is GRANTED in part and DENIED in part. Great Northern shall produce all redacted or withheld documents involving the Thenell Law Group because the attorney-client privilege or the work product doctrine do not apply. Great Northern does not need to produce its Carney Badley Spellman communications; its Wilson Smith Cochran & Dickerson communications and work product; its Cozen O'Connor communications and work product; or its invoices from these three firms and communications about those invoices. The attorney-client privilege and the work product doctrine apply.

IT IS SO ORDERED.

Dated this 25th day of February, 2016.

Ronald B. Leighton
United States District Judge